IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| SHANNON E. STEVENS, | ) | CASE NO. 4:12-CV-516 |
| | ) | |
| Plaintiff, | ) | JUDGE PATRICIA A. GAUGHAN |
| v. | ) | |
| | ) | MAGISTRATE JUDGE |
| | ) | KENNETH S. McHARGH |
| | ) | |
| COMMISSIONER OF SOCIAL SECURITY, | ) | REPORT & RECOMMENDATION |
| | ) | |
| | ) | |
| Defendant. | ) | |

This case is before the Magistrate Judge pursuant to Local Rule.  The issue before the undersigned is whether the final decision of the Commissioner of Social Security (the "Commissioner") denying Plaintiff Shannon Stevens' application for a Period of Disability and Disability Insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 416(i) and 423, and Supplemental Security Income benefits under Title XVI of the Social Security Act, 42 U.S.C § 1381 *et seq*., is supported by substantial evidence and, therefore, conclusive.

For the reasons set forth below, the Court recommends that the decision of the Commissioner be AFFIRMED.

I. INTRODUCTION & PROCEDURAL HISTORY

On February 19, 2008, Plaintiff Shannon Stevens ("Plaintiff" or "Stevens") protectively applied for a Period of Disability and Disability Insurance benefits and Supplemental Security Income benefits alleging that she became disabled on February 1, 2007, due to suffering from depression, anxiety, degenerative disc disease, frequent headaches and injuries to her back and neck.  (Tr. 58, 161).  Plaintiff's applications were denied initially and upon reconsideration.  (Tr. 80-96).  Thereafter, Stevens requested a hearing before an administrative law judge to contest the

denial of her applications.  (Tr. 97).  The Social Security Administration granted Plaintiff's request and scheduled a hearing.  (Tr. 104-07).

On December 14, 2009, Administrative Law Judge Alfred Costanzo (the "ALJ") convened a hearing to evaluate Plaintiff's applications.  (Tr. 55-79).  Plaintiff appeared at the hearing with counsel and testified before the ALJ.  (*Id*).  On January 4, 2010, the ALJ issued an unfavorable decision and determined that Stevens was not disabled.  (Tr. 18-27).  Subsequently, Stevens requested review of the ALJ's decision from the Appeals Council.  (Tr. 13-14).  The council initially denied Plaintiff's request on November 15, 2011, (Tr. 7), but after this determination Plaintiff submitted additional evidence to the council in support of her request.  Yet, after reviewing such evidence, the council again denied Stevens' request for review, thereby making the ALJ's decision the final decision of the Commissioner.  (Tr. 1-6).  Plaintiff now seeks judicial review of the Commissioner's final decision.  Review is proper pursuant to 42 U.S.C. §§ 405(g) and 1383(c).

Stevens, born on August 15, 1982, was 24 years old on her alleged onset date.  (Tr. 26, 115).  Accordingly, Stevens was considered as a "younger person" at all times for Social Security purposes.  *See* 20 C.F.R. §§ 416.963(c), 404.1563(c).  Plaintiff completed high school and earned her associates degree in graphic arts.  (Tr. 60).  She has past experience working in this capacity at various companies.  (Tr. 61-63).

Plaintiff was involved in an automobile accident in 1999.  (Tr. 223).  Since that time, Stevens has consistently complained of pain in her neck, back and left arm.  (*Id*.).  Plaintiff's physical impairments generally stem from this accident.  In October 2006, Stevens began to receive treatment for psychological problems which she alleged began when she was a little girl.  (Tr. 416).  Plaintiff was involved in another automobile accident in October 2009.  (Tr. 540-45).

2

II. ALJ's RULING

At step one of the five-step sequential analysis,[1] the ALJ found that Stevens had not engaged in substantial gainful activity since her alleged onset date of February 1, 2007. (Tr. 20). At step two, the ALJ ruled that Plaintiff suffered from the following severe impairments: lumbar, cervical and thoracic spine pain, migraines, drug abuse and an affective disorder. (*Id.*). At the next step, the ALJ determined that none of these impairments, individually or combined, met or equaled one of the listed impairments set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 21-22). Before proceeding to the next step in the analysis, the ALJ assessed Plaintiff's residual functional capacity ("RFC") to work. (Tr. 22-26). The ALJ found Stevens retained the ability to perform a limited range of light work as it is defined in 20 C.F.R. §§ 404.1567(b) and

---

[1] The Social Security Administration regulations require an ALJ to follow a five-step sequential analysis in making a determination as to "disability." *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The Sixth Circuit has summarized the five steps as follows:

(1) If a claimant is doing substantial gainful activity – i.e., working for profit – she is not disabled.

(2) If a claimant is not doing substantial gainful activity, her impairment must be severe before she can be found to be disabled.

(3) If a claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and her impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

(4) If a claimant's impairment does not prevent her from doing her past relevant work, she is not disabled.

(5) Even if a claimant's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that accommodates her residual functional capacity and vocational factors (age, education, skills, etc.), she is not disabled.

*Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).

416.967(b). (Tr. 22). More specifically, the ALJ restricted Stevens to light work requiring no more than occasional pushing or pulling with her left arm. (*Id*.). The ALJ also limited Stevens to positions with "simple, routine, [and] repetitive tasks." (*Id*.). Because Plaintiff's prior job as a graphic artist was categorized as a skilled position, at step four, the ALJ found Stevens could not return to this type of work given her current RFC. (Tr. 26). However, using the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Sbpt. P., App'x 2 (the "grids"), as a framework, at step five, the ALJ concluded there were jobs existing in significant numbers in the national economy which Plaintiff could perform. (Tr. 26-27).

### III. DISABILITY STANDARD

A claimant is entitled to receive Disability Insurance and/or Supplemental Security Income benefits only when she establishes disability within the meaning of the Social Security Act. *See* 42 U.S.C. §§ 423, 1381. A claimant is considered disabled when she cannot perform "substantial gainful employment by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve (12) months." *See* 20 C.F.R. §§ 404.1505, 416.905.

### IV. STANDARD OF REVIEW

Judicial review of the Commissioner's benefits decision is limited to a determination of whether, based on the record as a whole, the Commissioner's decision is supported by substantial evidence, and whether, in making that decision, the Commissioner employed the proper legal standards. *See Cunningham v. Apfel*, 12 F. App'x 361, 362 (6th Cir. 2001)*; Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984)*; Richardson v. Perales*, 402 U.S. 389, 401 (1971). "Substantial evidence" has been defined as more than a scintilla of evidence but less than a preponderance of the evidence. *See Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535

(6th Cir. 1981). Thus, if the record evidence is of such a nature that a reasonable mind might accept it as adequate support for the Commissioner's final benefits determination, then that determination must be affirmed. *Id.* The Commissioner's determination must stand if supported by substantial evidence, regardless of whether this Court would resolve the issues of fact in dispute differently or substantial evidence also supports the opposite conclusion. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983). This Court may not try the case de novo, resolve conflicts in the evidence, or decide questions of credibility. *See Garner*, 745 F.2d at 387. However, it may examine all the evidence in the record in making its decision, regardless of whether such evidence was cited in the Commissioner's final decision. *See Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989).

## V. ANALYSIS

Plaintiff challenges the ALJ's decision on two grounds. First, Stevens contends the ALJ's unfavorable assessment of her credibility is not supported by the record. Second, Plaintiff argues that the ALJ's finding at step five is erroneous because the ALJ improperly relied upon the Medical-Vocational Guidelines to carry his burden. Neither of these objections warrant reversal or remand.

### A. ALJ's Credibility Finding

It is the ALJ's responsibility to make decisions regarding the credibility of witnesses. "An ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since [the] ALJ is charged with the duty of observing a witness's demeanor and credibility." *Vance v. Comm'r of Soc. Sec.*, 260 F. App'x 801, 806 (6th Cir. 2008) (*citing Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997)). Notwithstanding, the

5

ALJ's credibility finding must be supported by substantial evidence, *Walters*, 127 F.3d at 531, as the ALJ is "not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007).

This circuit follows a two-step process in the evaluation of the claimant's subjective complaints of disabling pain. 20 C.F.R. §§ 416.929(a), 404.1529(a); *Rogers,* 486 F.3d at 247; *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 853-54 (6th Cir. 1986); *Felisky v. Bowen,* 35 F.3d 1027, 1039-40 (6th Cir. 1994). First, the ALJ must determine whether the claimant has an underlying medically determinable impairment which could reasonably be expected to produce the claimant's symptoms. *Rogers*, 486 F.3d at 247. Second, if such an impairment exists, then the ALJ must evaluate the intensity, persistence and limiting effects of the symptoms on the claimant's ability to work. *Id*. The ALJ should consider the following factors in evaluating the claimant's symptoms: the claimant's daily activities; the location, duration, frequency and intensity of the claimant's symptoms; any precipitating or aggravating factors; the type, dosage, effectiveness and side effects of any medication taken to alleviate the symptoms; treatment, other than medication, the claimant receives to relieve the pain; measures used by the claimant to relieve the symptoms; and statements from the claimant and the claimant's treating and examining physicians. *Id.*; *see Felisky*, 35 F.3d at 1039-40; *see also* SSR 96-7p.

Here, the ALJ properly evaluated Plaintiff's claims of pain and other disabling symptoms pursuant to this two-step process. Although the ALJ found that Stevens' impairments could reasonably be expected to cause her alleged symptoms, the ALJ discounted the credibility of Plaintiff's allegations regarding the intensity, persistence and limiting effects of her symptoms at

6

the second step of the two-part inquiry.  The ALJ supplied several reasons for discrediting Plaintiff's allegations, including the lack of objective medical evidence supporting Plaintiff's claim, Plaintiff's conservative treatment, the extent of Plaintiff's daily activities, and the inconsistent statements Plaintiff made regarding her symptoms and limitations.

For example, the ALJ highlighted that several of the objective tests performed on Plaintiff showed unremarkable results which did not support her alleged degree of limitation. (Tr. 23).  The ALJ also noted significant differences between what Stevens initially reported as part of her daily routine, and that which she described in her testimony during the hearing.  (Tr. 24).  For instance, she originally indicated she was capable of feeding and bathing her pets, cleaning their cages, grocery shopping and cooking. (*Id*.).  But, at the hearing, Stevens testified that her normal routine mostly consisted of watching television and reading for short periods of time, doing crossword puzzles and feeding her pets.  (Tr. 73, 76-77).  However, the ALJ noted that the medical evidence did not show any significant deterioration in Stevens' condition to support this reduction in her activity level.  (Tr. 24).  Finally, the ALJ explained that the record contained conflicting statements from Plaintiff regarding the limiting effects of her ailments. (*Id*.).  The ALJ found Plaintiff made inconsistent statements to her doctors regarding the side effects of her headaches, her ability to remain engaged with playing softball and her level of social activity.  (Tr. 24).

Despite these satisfactory reasons supporting the ALJ's negative credibility finding, Plaintiff submits the ALJ's ruling was erroneous due to a number of "troubling misstatements" by the ALJ.  (Pl.'s Br. at 17).  First, Plaintiff suggests that the ALJ's analysis was improperly based on a statement that Stevens' extremities were normal.  To rebut this claim, Plaintiff identified two medical records, one from September 2008 and another from August 2009,

7

wherein her doctors noted she suffered from numbness and other symptoms in her upper extremity. While Plaintiff is correct that these records document her complaints of numbness, the record also supports the conclusion reached by the ALJ. Although the reports referenced by Plaintiff refer to her complaints of numbness and other problems, both records also note that her "[e]xtremities [we]re normal" and that she had "[n]ormal tone and power in her upper extremities" as indicated by the ALJ. (Tr. 454, 619). Accordingly, the ALJ's reference to this medical finding was not a misstatement, but an accurate account of the record, and evidence upon which the ALJ could rely. SSR 96-7p ("[O]bjective medical evidence 'is a useful indicator to assist [] in making reasonable conclusions about the intensity and persistence of' an individual's symptoms and the effects those symptoms may have on the individual's ability to function.").

Without providing much analysis or explanation, Plaintiff contends there are numerous other objective findings which support her allegations of pain. Yet, the existence of this evidence does not compel the undersigned to overturn the ALJ's decision. It is very well possible that the record may contain evidence which supports a different conclusion than that reached by the ALJ. However, so long as the ALJ's decision is supported by evidence which "a reasonable mind might accept as adequate to support [the] conclusion" it must upheld. *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001) (*citing Richardson, supra*, 402 U.S. at 401). "This is so because there is a 'zone of choice' within which the Commissioner can act, without the fear of court interference." *Id*. at 773 (*citing Baker v. Heckler,* 730 F.2d 1147, 1150 (8th Cir. 1984)).

Stevens also argues that the ALJ's conclusion that her impairments only required conservative treatment was both misleading and mislead. However, the evidence cited by Plaintiff does not persuade the undersigned that the ALJ's finding was flawed. Plaintiff noted

8

that she first sought treatment for her pain in 2002 after being involved in an auto accident. (Tr. 222). By 2005, she was seeing Dr. Paul Shin for pain management. (Tr. 249-50). Despite being administered chiropractic treatment, physical therapy, and using a TENS unit, Dr. Shin noted that Plaintiff's pain symptoms did not improve. (Tr. 249). However, Plaintiff informed the doctor that lying down and taking medication – arguably conservative measures — improved her symptoms. (*Id*.). Eventually, Plaintiff discontinued treatment with Dr. Shin because she could no longer afford the treatment. (Tr. 281).

Plaintiff submits that the ALJ should not have concluded that her condition was reasonably managed with conservative treatment. Stevens points to a record from her treating physician, Dr. James Chillicott, from October 2006, in which the doctor remarked that Stevens had underwent "multiple attempts to control [her] pain with *more* conservative measures" but that she "continue[d] to require [] medication" in order to function. (Tr. 280) (emphasis added). But, taken in context, Dr. Chillicott's note, which was penned months prior to Stevens' alleged onset date, can only reasonably be construed as the doctor acknowledging that Plaintiff's symptoms could not be managed with less conservative measures than medication. It does not, however, as Plaintiff insists, indicate that Plaintiff's treatment was not 'conservative in nature.'

Plaintiff also claims she was simply prescribed narcotic pain medications because she was uninsured and had to pay for her own treatment out of pocket. But, the record belies this suggestion. It is just as likely that Plaintiff was prescribed pain medication because it was repeatedly noted that she received some pain relief by taking medication. Furthermore, though Stevens identified instances where she informed doctors that her pain was so bad that she had to take two narcotic pills instead of one to manage her pain, the credibility of Plaintiff's allegations is undermined by Plaintiff's admitted addiction to narcotic pain medication and discharge from

her doctor's care due to noncompliance with the usage of these medications. (Tr. 253). Thus, Plaintiff has failed to show that her need to take multiple pills was caused by her level of pain rather than her addictive behavior. As a result, she has not shown that the ALJ's finding was in error.

Although the Court finds that there is substantial evidence to support the ALJ's credibility assessment, the undersigned notes that one portion of the ALJ's analysis is flawed. As Plaintiff pointed out, the ALJ improperly concluded that Stevens had never received inpatient treatment for depression. To the contrary, the record shows that on November 21, 2008, Plaintiff was admitted to the Ashtabula County Medical Center for depression. (Tr. 442, 444). Stevens was discharged five days later. (Tr. 450). The ALJ acknowledged that Plaintiff had received inpatient treatment for addiction, but erroneously concluded that she had not received the same for depression. (Tr. 24). Nevertheless, despite the ALJ's error, the undersigned finds there is sufficient support in the record to support the ALJ's unfavorable view of Plaintiff's credibility including, but not limited to Stevens' inconsistent statements regarding the extent of her symptoms, the lack of objective evidence supporting her allegations and her conservative treatment consisting mostly of prescription pain medication.

## B. Medical-Vocational Guidelines

Plaintiff's final assignment of error attacks the ALJ's application of the Medical-Vocational Guidelines at step five of the sequential evaluation process. Plaintiff instead contends that because the ALJ acknowledged she suffered from nonexertional limitations, the ALJ should have obtained testimony from a vocational expert in order to determine whether there were jobs existing in significant numbers in the national economy which she could perform.

Once it is determined that a claimant does not have the RFC to perform her past relevant work, the burden shifts to the Commissioner to show that the claimant possesses the capacity to perform other substantial gainful activity existing in the national economy. *See Cole v. Sec'y of Health & Human Servs.*, 820 F.2d 768, 771 (6th Cir. 1987). "To meet this burden, there must be a finding supported by substantial evidence that [the claimant] has the vocational qualifications to perform specific jobs." *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987) (citations and quotations omitted). The Commissioner, in determining whether a claimant can perform a significant number of jobs in the national economy, can rely on either the Medical-Vocational Guidelines or the testimony of a vocational expert as to the availability of jobs. *See Damron v. Sec'y of Health & Human Servs.*, 778 F.2d 279, 281-82 (6th Cir. 1985). However, "[b]ecause the Guidelines take into account only exertional limitations, they generally are considered to have limited application where a claimant is limited by significant non-exertional impairments". *Carreon v. Massanari*, 51 F. App'x 571, 575 (6th Cir. 2002).

Where a claimant has "a nonexertional limitation that significantly limits the range of work permitted by his [or her] exertional limitations," the Commissioner may not rely *solely* on the Medical-Vocational Guidelines to satisfy this burden. *Collins v. Comm'r of Soc. Sec.*, 357 F. App'x 663, 670 (6th Cir. 2009) (*quoting Cole*, 820 F.2d at 771). But, "[b]efore reaching the conclusion that the grid will not be applied because of the alleged nonexertional limitations, those limitations must be severe enough to restrict a full range of gainful employment at the designated level." *Id.* (citing *Mullins v. Sec'y of Health & Human Servs.*, 836 F.2d 980, 985); *see Moon*, 923 F.2d at 1182.

The question, therefore, is whether the substantial evidence in the record supports the ALJ's decision that Plaintiff's nonexertional limitations were not significant and thus did not

11

diminish the occupational base of light work available to Stevens. So long as Stevens' nonexertional limitations were not significant, usage of the guidelines was proper. *Collins*, 357 F. App'x at 670.

There is substantial evidence in the record supporting the ALJ's decision that Plaintiff's nonexertional impairments did not significantly erode the job base available to Plaintiff such to preclude application of the grids. Plaintiff contends it was improper for the ALJ to utilize the grids because the ALJ's RFC assessment limited Plaintiff to work that entailed simple, routine, and repetitive tasks – nonexertional factors which Plaintiff maintains are unaccounted for in the grids. Accordingly, Plaintiff argues that the ALJ should not have utilized the grids because while they recognize unskilled work, they do not account for jobs consisting of only simple, routine and repetitive tasks. However, the Sixth Circuit and other courts in this circuit have found otherwise. *E.g. Allison v. Apfel*, No. 99-4090, 2000 WL 1276950, at *4 (6th Cir. Aug. 30, 2000) (unpublished); *Smith v. Astrue*, No. 1:10-cv-1368, 2011 WL 4833120, at *10 (N.D.Ohio Oct. 12, 2011); *Taylor v. Comm'r of Soc. Sec.*, No. 1:11-cv-46, 2012 WL 1029299, at *9-10 (W.D.Mich. Mar. 26, 2012); *but see Frye v. Astrue*, No. 1:11-cv-1019, 2012 WL 1831548, at *21-22 (N.D.Ohio Apr. 9, 2012).

In *Allison v. Apfel*, the claimant made an argument very similar to that put forth by Stevens. The claimant submitted that the ruling in *Shelman v. Heckler*, 821 F.2d 316 (6th Cir. 1987) precluded application of the grids because the ALJ had restricted Allison to "simple, routine repetitive work." *Allison*, 2000 WL 1276950, at *4. But, the Sixth Circuit rejected Allison's argument stating:

> We believe that the ALJ's qualification that Allison was limited to simple, repetitive, and routine tasks, within the category of light work simply means that Allison is limited to unskilled light work. Indeed, the Social Security

> Administration regulations define unskilled work as "work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time" and gives the examples of "handling, feeding and offbearing" – in other words, simple, repetitive tasks. Moreover, the ALJ appeared to view simple, routine, repetitive work as synonymous with unskilled work. . . . Because Allison's nonexertional impairments only limited him to unskilled light work, the ALJ was correct to conclude that there remained a significant number of jobs in the economy that Allison could perform. . .

*Id*. (internal citations omitted).

The court's ruling in *Allison* is instructive. Though the ALJ's RFC assessment did not expressly limit Stevens to unskilled work, it specifically noted that she was restricted to simple, routine and repetitive tasks. (Tr. 22). Essentially, this limitation was analogous to confining Stevens to unskilled work. *See id*. This definition of unskilled work is consistent with the ruling in *Allison*, and with the ALJ's interpretation of unskilled work. Notably, at step four, the ALJ found Stevens could not return to her job as a graphic artist because it constituted as "skilled" work and "[s]killed work require[d] more than simple, routine, repetitive tasks." (Tr. 26). In addition, at step five of the analysis, the ALJ stated his view that "[u]nskilled work generally consist[ed] of only simple, routine, [and] repetitive tasks." (Tr. 27). Thus, the ALJ clearly viewed simple, routine and repetitive tasks as being wholly consistent with "unskilled" work. As a result, Plaintiff's restriction to simple, routine, repetitive tasks did not preclude application of the grids.[2]  *Id*.

---

[2] Plaintiff did not contest the ALJ's use of the grids based upon the ALJ's finding that she could only occasionally push or pull with her left arm. However, such an objection would not prevail. Light work only requires the ability to perform "some pushing and pulling of arm or leg controls." 20 C.F.R. §§ 404.1567(b), 416.967(b). Although the regulations do not define the term "some", the undersigned is not convinced that Plaintiff's inability to push or pull with her left arm would significantly erode the number of light jobs available. *See Mayes v. Astrue*, No. 3:08-cv-309, 2009 WL 2477373, at *8 (E.D.Tenn. Aug. 11, 2009) (finding that the claimant's

Finally, Stevens submits that the ALJ's RFC assessment was erroneous because it did not incorporate speed and pace based restrictions in accordance with *Ealy v. Commissioner of Social Security*, 594 F.3d 504, 516-17 (6th Cir. 2010).  The Sixth Circuit reversed the ALJ's ruling in *Ealy* because the hypothetical question fashioned by the ALJ – which formed the basis of the vocational expert's opinion upon which the ALJ relied – failed to incorporate speed and pace based restrictions which Ealy's doctor outlined.  *Ealy*, 594 F.3d at 516.  Therefore, the court found that the hypothetical question did not accurately describe Ealy's physical and mental impairments, and consequently invalidated the ALJ's reliance upon the vocational expert's testimony.  *Id.* at 517.

However, because there was no vocational expert present at Plaintiff's hearing, it is not clear to the Court how the principle set forth in *Ealy* is applicable to the instant case.  *Ealy* addressed the issue of the sufficiency of an ALJ's hypothetical question in describing the claimant's impairments.  Stevens failed to present the Court with any case law explaining how the ruling in *Ealy* is applicable to cases wherein the ALJ's step five finding is based upon the grids, rather than the testimony of a vocational expert.  Additionally, the ALJ's acknowledgment of Plaintiff's moderate impairment in concentration, persistence and pace, (Tr. 22), did not automatically preclude use of the grids.  *Hamblin v. Astrue*, No. 3:08-cv-026, 2009 WL 26690, at *7 (E.D.Tenn. Jan. 5, 2009).  "To preclude use of the grid[s], a nonexertional limitation must *significantly* or *severely* restrict the ability to work."  *Id*. (emphasis in original).  Although the ALJ concluded Plaintiff suffered a moderate limitation in this area of functioning, the ALJ noted that Plaintiff remained capable of driving, preparing meals, playing card games and playing pool.

---

limited ability to push and pull did not preclude the grids from directing a finding of not disabled).

(Tr. 22). Thus, the ALJ did not believe that this impairment significantly affected Stevens' ability to function. Furthermore, even assuming that the ruling in *Ealy* were applicable – which the court does not find – Plaintiff did not identify what speed or pace based restrictions the ALJ should have incorporated into his RFC assessment. In contrast, the plaintiff in *Ealy* presented the court with evidence showing that his doctor had prescribed specific speed and pace restrictions governing his ability to work (i.e. Ealy's doctor limited his ability to "sustain attention to complete simple repetitive tasks to 'two-hour segments over an eight-hour day where speed was not critical.'"). *Ealy*, 594 F.3d at 516.

## VI. DECISION

For the foregoing reasons, the Magistrate Judge finds that the decision of the Commissioner is supported by substantial evidence. Accordingly, the Court recommends that the decision of the Commissioner be **AFFIRMED**.

s/ Kenneth S. McHargh
Kenneth S. McHargh
United States Magistrate Judge

Date: January 7, 2013.

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days of mailing of this notice. Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. *See Thomas v. Arn,* 474 U.S. 140 (1985); *see also United States v. Walter*s, 638 F.2d 947 (6th Cir. 1981).